UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

ANDREW STEPHEN HULETT,        Case No. 19-46577-mlo
       Chapter 7
   Debtor        Hon. Maria L. Oxholm
_____/
v.

MANAGEDWAY COMPANY,        Adversary No. 19-04308-mlo

   Plaintiff,

vs.

ANDREW STEPHEN HULETT,

   Defendant.
_____/

**RESPONSE TO MOTION FOR
SANCTIONS AND TO COMPEL DEFENDANT'S DEPOSITION**

NOW COMES, Andrew Stephen Hulett ("Defendant"), by and through his attorneys, OSIPOV BIGELMAN, P.C., and responds as follows:

**Background**

The Plaintiff begins every motion in this case by mentioning the amount of the state court judgment, advising that Mr. Hulett is dishonest, and how he damaged ManagedWay.

**To date, this case has been a disaster for the Plaintiff.** This Motion is a desperate attempt to try to poison the Court's view of Mr. Hulett as the facts and the law do not support the Plaintiff's claims.

Unlike, the underlying state court action, Mr. Hulett' s bankruptcy counsel has conducted thorough and meaningful discovery in this case which has established that the State Court Judgment of $2,714,000.00 was obtained through active misrepresentations to the Court, if not outright fraud. This judgment was based upon an expert witness report- the same one being used in this case ("Expert Witness Report"). The Plaintiff's expert witness was not deposed in the state court action nor was his report challenged in response to the Summary Disposition Motion. The Expert Report is attached **Exhibit A**.

The bulk of the judgment ($1,743,000.00) is based upon a claim that ManagedWay was not awarded a job that was put out for public bid by an entity called Michigan State Educational Network ("MISEN") supposedly because Mr. Hulett interfered with ManagedWay's bid. This job was awarded to another company, Merit Networks, whose bid was $204,150.00 lower than ManagedWay's bid, and $94,248.00 lower than the Comcast Business bid. See attached **Exhibit B**. Accordingly, ManagedWay's bid was the highest that was submitted. The corporate representative of MISEN testified that they preferred to have a separate vendor, as ManagedWay was already the primary internet provider for MISEN and this award

was for independent internet access in case the primary access went down. See MISEN Deposition Transcript at Page 15:3-11 which is attached as **Exhibit C**. The corporate representative was also unfamiliar with the name of the Defendant Andrew Hulett. See MISEN Deposition Transcript at Page 29:12-22. Accordingly, the Plaintiff has no damages as a result of failing to win a public bid that they were highest bidder and the non-preferred bidder.

Another $545,000.00 of the damages claimed in the Expert Report have no basis in fact or law as they are claimed as lost profits for a 24-month equitable extension of the non-compete agreement, which was not sought or awarded in the State Court. This leaves a remaining damage claim of $419,000.00, which the Plaintiff cannot prove which is why they have refused to produce their expert witness for examination. Mr. Hulett has had to file a Motion to Compel the Deposition of the Expert Witness, which is currently pending. See docket #180.

Accordingly, the prologue of each and every one of the Plaintiff's Motions are patently false and misleading.

### Mr. Hulett's Deposition

The only sanctionable conduct at Mr. Hulett's deposition was that of Plaintiff's counsel, Brandon Wilson ("Mr.Wilson").

It should be noted that during the underlying state court case, Plaintiff took a comprehensive 7-hour deposition of Mr. Hulett on November 9, 2018. The 171-

page Deposition Transcript (Abridged) is attached hereto as **Exhibit D**.

On July 21, 2020, Mr. Hulett attended another 5 ½ hour deposition. As soon as the deposition began, Mr. Wilson threatened to terminate the deposition by falsely claiming that he could not see Mr. Hulett only to be corrected by everyone, even the ZOOM technician[1]. See Andrew Hulett Deposition Transcript of July 21, 2020 at Pages11:21-13:8 which is attached as **Exhibit E**. The deposition went downhill from there.



---

[1] The picture below was emailed to Mr. Wilson when he threatened to terminate the deposition minutes into the examination.

Mr. Wilson spent the first several hours of the deposition and the first 103 pages[2] of the Deposition Transcript asking questions about a transcript of a phone conversation between Mr. Hulett and Robert Sanders, President and CEO of the MangedWay.  See attached **Exhibit E**.  The vast majority of this line of questioning was inappropriate and inadmissible as Mr. Hulett was asked on countless occasions to interpret and to speculate as to what Mr. Sanders meant by his words on the transcript or what a third party believed about some other issue that took place several years ago.

These improper questions drew at least 25 objections as Mr. Wilson improperly asked Mr. Hulett to speculate over and over again.  The balance of the objections were based on Mr. Wilson's badgering the witness, asking repetitive questions, and mischaracterizing Mr. Hulett's testimony, all while trying to incorporate it into a question.

**Mr. Wilson's Unethical Behavior**

As described above, Mr. Wilson's questioning was improper, and when he did not get the answers that he wanted he lashed out at Mr. Hulett[3] in a highly unethical and unprofessional manner:.

```
19        MR. BIGELMAN:  Objection; calls for speculation.  Go
20   ahead and answer.
```

---

[2] The entire deposition transcript 187 pages so his line of questioning comprised 55% of the deposition.
[3] See Andrew Hulett Deposition Transcript at Page 60:19-61:12.

Page **5** of **13**

21       THE WITNESS:  Yeah, I'm not going to speculate on that.
22   BY MR. WILSON:
23       Q.  I'm not asking you to speculate, I'm asking for your
24   knowledge.
25       A.  You're asking me to speculate.
Page 61
1       Q.  Go ahead, sir, and answer my question, please.
2           MR. BIGELMAN:  Answer the question as best you can.
3           THE WITNESS:  I'm sorry, I forgot the question.
4   There's a lot of back and forth.  What was the question again?
5   BY MR. WILSON:
6       Q.  Yeah.  Most of this is caused by your own stupidity,
7   frankly, and childish behavior.
8           MR. BIGELMAN:  We're going to stop right there.  You
9   are out of line.  You are out of line with the civility
10  principles.  You've called him "Andrew" instead of "Mr. Hulett,"
11  "stupidity" now.  If it happens again, we're done, and there's
12  going to be a complaint against you.  Straighten up.

**Violation of Michigan Rules of Professional Conduct and Civility Principles**

Mr. Hulett is Native American and is in a protected class under the Michigan Rules of Professional Conduct. A fact which the Plaintiff and its counsel were well aware of.

Mr. Wilson's actions violated the Civility Principles of the Eastern District of Michigan and MRPC 6.5. Rule 6.5 of Michigan's Rules of Professional Conduct states as follows:

> **Rule: 6.5 Professional Conduct** (a) A lawyer shall treat with courtesy and respect all persons involved in the legal process. A lawyer shall take particular care to avoid treating such a person discourteously or disrespectfully because of the person's race, gender, or other protected personal characteristic. To the extent possible, a lawyer shall require subordinate lawyers and

> nonlawyer assistants to provide such courteous and respectful treatment. (b) **A lawyer serving as an adjudicative officer shall, without regard to a person's race, gender, or other protected personal characteristic, treat every person fairly, with courtesy and respect**. To the extent possible, the lawyer shall require staff and others who are subject to the adjudicative officer's direction and control to provide such fair, courteous, and respectful treatment to persons who have contact with the adjudicative tribunal. Comment:

Mr. Wilson's conduct also violated the Civility Principles of this Court which states in pertinent part:

> An attorney's conduct should be characterized at all times by **personal courtesy and professional integrity** in the fullest sense of those terms. In fulfilling our duty to represent a client vigorously as attorneys, we will be mindful of our obligations to the administration of justice, which is a truth-seeking process designed to resolve human and societal problems in a rational, peaceful and efficient manner.

Mr. Wilson's unprofessional behavior continued, and he had to be admonished again, to wit[4]:

```
 MR. WILSON:  Move to strike as nonresponsive, and I'm
 7   marking that down.  We're up to, just so everyone's aware, we're
 8   up to more than 20 refusals to answer.
 9         THE WITNESS:  Maybe you'll get a gold star.
10         MR. BIGELMAN:  We'll all have access to the transcript
11   when this is over and we'll see that your tally is baseless.
12         MR. WILSON:  You think I'm under or over, Jeff?
13         MR. BIGELMAN:  I didn't -- I think you're playing
14   games, and I think you're out of line, and I think your conduct
15   is sanctionable under the rules of professional conduct.  That's
16   what I think.
17         MR. WILSON:  In what way?
18         THE WITNESS:  You called me stupid, for one.  I didn't
19   appreciate that.
20         MR. BIGELMAN:  You know better, and if it continues,
21   they'll be a grievance filed.
22         MR. WILSON:  You're going to grieve me?
23         MR. BIGELMAN:  If you continue disparaging my client,
24   yeah, and blaming his answers on his stupidity, yeah, I have a
25   big problem with that.  We'll bring that before the Judge, too.
Page 81
 1         You've wasted two hours, now, going through a
 2   transcript where everything's in black and white.  Everything he
 3   said, everything Robert Sanders said, and seeking
 4   interpretations of it, and speculations, and what he believed
 5   and what a third party believed, when it's all in black and
 6   white.  It's improper.  This whole line of questioning is
 7   improper.
```

The balance of the deposition consisted of Mr. Wilson's continued improper hypothetical questions which drew approximately ten more objections. Finally, at

---

[4] See Andrew Hulett Deposition Transcript at 80:7-81:7.

approximately 4:05 p.m. Mr. Wilson had a complete breakdown[5] and walked away from the

ZOOM deposition:



23    Q.  Okay.  That's your position.  On the other hand, we
24  have ManagedWay, who thinks you did do a lot to hurt them, to
25  the tune of $2.174 million.  And so what I'm asking you is do
Page 187
 1  you acknowledge here that if, in fact, you did something to
 2  cause that harm, that that's harmful to ManagedWay, that hurts
 3  them?
 **4**  **A.  I didn't cause any harm to ManagedWay.  That's --**
 5  Q.  You have a responsibility for that?
 **6**  **A.  Hypotheticals are --**
 7      MR. WILSON:  Okay.  All right.  What we're going to do,
 8  since the witness will not answer my questions, is I will

---

[5] This deposition was filmed so there is video evidencing his breakdown.

```
 9   suspend the deposition.  I'm going to move for costs and to
10   compel the witness to appear in chambers or at the Court's jury
11   room to complete the deposition, because he flatly refuses to
12   answer basic questions.
13        MR. BIGELMAN:  You're playing semantics because you're
14   tired.  This deposition has been poorly orchestrated by you, and
15   this is now five-and-a-half hours into today and 12-and-a-half
16   hours into the deposition.  We will oppose anything that you
17   file and we will advise the Court of your unprofessionalism.
18        (At 4:05 p.m. - Deposition concluded.)
```

This concluded the bizarre and unprofessional examination taken and abruptly ended by Mr. Wilson for which the Plaintiff now continues to attack Mr. Hulett and his counsel for their own shortcomings and unethical behavior.

## Alleged Improper Objections by Counsel

As stated above, many of Mr. Wilson's questions were improper as they called for speculation, interpretation, legal conclusions, repetitive questions, mischaracterizations of testimony, hypothetical questions, and lack of foundation. This list is not exhaustive.

There were no improper objections that would be sanctionable.  **The only conduct that was sanctionable that day was that of Mr. Wilson.**

## Alleged Improper Answers by Mr. Hulett

On November 9, 2018, Mr. Hulett sat for a deposition on these very same topics for 7 hours.  During this time his memory was fresher, and so, in the July 21,

2020 deposition, Mr. Hulett referred Mr. Wilson to his prior testimony. Mr. Hulett's responses were proper and brought context to the questions. Nevertheless, Mr. Hulett was then subjected to a barrage of repetitive questions by a very hostile and angry Mr. Wilson who was mad because he didn't get the exact answers he wanted. The entire deposition transcript needs to be read in order to view any of the cherry-picked snippets included in the Motion in proper context.

Mr. Wilson even complained to the Court that Mr. Hulett was being evasive when Mr. Hulett attempted to explain simple linguistics to Mr. Wilson. See page 22 of 25 of docket #172-3. Mr. Hulett was referring to backchannel linguistics, which is defined as:

> In linguistics, a backchannel during a conversation occurs when one participant is speaking and another participant interjects responses to the speaker. A backchannel response can be verbal, non-verbal, or both. Backchannel responses are often phatic expressions, primarily serving a social or meta-conversational purpose, such as signifying the listener's attention, understanding, or agreement, rather than conveying significant information. **Examples include such expressions as "yeah", "uh-huh", "hmm", and "right".**

All of these questions concerned a transcript of a telephone conversation where backchannel linguistics are a commonplace. See attached **Exhibit F**.

**Again, the only sanctionable conduct during that deposition was that of Mr. Wilson.**

## Conclusion

The Defendant could have brought a similar Motion regarding the Fed. R. Civ. P. 30(b)(6) deposition of ManagedWay's corporate representative but chose not to despite the fact that on numerous occasions Stephen Dunn, Esq. instructed his client not to answer questions in violation of Rule 30(c)(2) and made countless speaking objections. The Corporate Representative, Reece Serra, is a licensed attorney who was extremely evasive, appears to have lied under oath, and repeated the same pre-written narrative in many of his responses. As stated above, the present Motion is petty, and we chose not to file a similar motion despite having a legitimate basis to do so.

For the reasons stated herein, all relief sought by the Plaintiff should be denied with prejudice. If granted, Mr. Hulett would have to sit for 7 hours of depositions on the same topic that he has already been deposed on for 12 ½ hours. Unbelievably, the Plaintiff is seeking compensation for its attorneys unethical, unprofessional, and harassing behavior at the last deposition.

Additionally, Mr. Wilson should be sanctioned under 28 USC 1927 for filing this frivolous motion and sanctioned under the Court's inherent powers under 11 USC 105 for his unethical behavior at the deposition that took place on July 21, 2020. Further, now that Mr. Wilson has left Howard and Howard, the firm should

be sanctioned under 28 USC 1927 for the continued prosecution of this frivolous Motion.

                                        Respectfully submitted,

                                        **OSIPOV BIGELMAN, P.C.**

Dated: August 18, 2020             /s/ Jeffrey H. Bigelman
                                        JEFFREY H. BIGELMAN (P61755)
                                        Attorneys for Defendant
                                        20700 Civic Center Drive, Ste. 420
                                        Southfield, MI 48076
                                        Tel: (248) 663-1800
                                        Phone: (248) 633-1801
                                        jhb@osbig.com